Middle Western Telephone Company and Ohio Central Telephone Corporation, Appellants, v. United States Fire Insurance Company of New York, Appellee.

Gen. No. 39,822.

Opinion filed June 29, 1938.   Rehearing denied July 12, 1938.

HOWARD A. BRUNDAGE, of Chicago, for appellants; AUSTIN J. DOYLE, of Chicago, of counsel.

SAMUEL LEVIN, of Chicago, for appellee; HARRY R. BEGLEY, of Chicago, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiffs from a judgment entered for the defendant upon the finding of the court at the close of the plaintiffs' case.

The action was to recover the unearned premiums at the time a certain fire insurance policy issued to the plaintiffs was canceled by the defendant insurance company. No questions have been raised as to the pleadings, but the question involved is largely one of fact, and from the facts it appears that the Middle Western Telephone Company, a holding company, is a corporation organized by virtue of the laws of the State of Delaware, and the Ohio Central Telephone Corporation, an operating company, is a corporation existing by virtue of the laws of the State of Ohio, and that they are the plaintiffs.

The defendant is the United States Fire Insurance Company of New York, which was organized under and by virtue of the laws of the State of New York.

In June, 1930, the plaintiffs, having been solicited by Michael B. Ryan, a Chicago insurance broker, commissioned him to procure insurance to cover the properties of the operating company. Ryan, as a broker to obtain fire insurance for the plaintiffs, approached Crum & Forster, the defendant's general agent in Chicago, and arranged for a temporary policy, which he delivered to the plaintiffs together with his own bill in the amount of the premium.

On October 4, 1930, the regular policy, with term commencing as of that date was ready for delivery

and was turned over by the defendant's general agent to the broker Ryan for delivery to the plaintiffs. Ryan delivered the policy to the plaintiffs, together with his own credit memorandum in the amount of $2,009.58 on the temporary policy, which had been canceled, together with his own bill in the amount of $1,407.73, thereby aggregating an annual premium of $3,417.35, so from the evidence it appears that at the time of the delivery of the policy by Ryan from the defendant, the plaintiffs paid to Ryan $3,417.35, the premium for the period for which this fire insurance policy was issued.

Six months later, on April 4, 1931, the plaintiffs forwarded this policy to Ryan and ordered him to surrender it to the defendant for cancellation, and it appears from the evidence that there was due $1,706.66 as unearned premium. After four or five months, the plaintiffs, not having received the return premium communicated with the general agent of the defendant, and by letter from it learned that the return premium of $1,706.66 had been paid to the broker, meaning Michael B. Ryan, who had acted for the plaintiffs in procuring the policy, as well as in having it canceled.

The evidence shows that Ryan, after receiving the money from the plaintiffs in payment of the premium, paid over to the defendant $1,357.86 in four instalments, and upon cancellation of this policy, the amount of the unearned premium of $1,706.66 was credited to the personal account of Ryan. At a conference between the plaintiffs and the broker Ryan, the attorney for the plaintiff took Ryan's note, payable in six months in the amount of the return premium, less commission, in order, as the broker Ryan testified, "to give me some time to work this thing out . . . to save the situation that is here now." At the

end of the six months period the note remained unpaid and the plaintiffs thereupon filed this suit against the defendant.

The contention of the plaintiffs is that ordinarily an insurance broker is the agent of the insurance company for delivery of the policy and the collection of the premiums, and they cite in support of this contention the case of *Ocean Accident & G. Corp. v. Emporia Tele. Co.,* 139 Kan. 106, decided in 1934, in which the court said:

"The only question before us is whether the broker, St. Clair, was authorized to receive payment of the premium. A broker is, of course, the agent of the person who employs him. For purposes which are not in conflict, and when authorized to do so, he may represent both parties to a transaction. Defendant requested the broker, St. Clair, to procure for it certain insurance, and thereby made him its agent for that purpose. A broker so employed usually is regarded as the agent also of the insurer for the purpose of delivering the policy and collecting the premium."

The answer to plaintiffs' contention is that the decisions of this State are not in accord with what was said by the Supreme Court in *Ocean Accident & G. Corp. v. Emporia Tele. Co.,* 139 Kan. 106, for it appears from an examination of the authorities that as to whether the insurance broker is the agent of the assured or the insurer, is generally a question of fact to be considered.

In the case of *Lycoming Fire Ins. Co. v. Rubin,* 79 Ill. 402, the court on the question of an agent's act, stated:

"This supposed agent is a Mr. Ludlum, who was not at that time, nor at any other time, the appointed agent of this [insurance] company. He was a man in

the habit of picking up, as a broker on the street, any risk of which he might get information. It was on his application to appellee [assured], to permit him to place some insurance for appellee, that the policy was written. He never made any examination of the stock at any time; he merely looked into the 'show case,' where he saw some watches, some chains, and some plated forks; saw no invoices, but took the value from representations and figures made by appellee, which appellee had ready to show him on the second visit he made to him. After this showing, Ludlum took the application to the agent of the company, and obtained the policy in question. In this, he was the agent of appellee and not of [the insurance company] appellants. The fact that the agent allowed him a commission does not change the character in which he acted.'' Applying the quoted portion of the opinion to the instant case, the fact that Ryan was allowed commissions does not change the character in which he acted. See also *Merchants' Ins. Co. of Newark v. Union Ins. Co. of San Francisco,* 162 Ill. 173; *Ben Franklin Ins. Co. v. Weary,* 4 Ill. App. 74; *Kings County Fire Ins. Co. v. Swigert,* 11 Ill. App. 590; *Security Ins. Co. v. Mette,* 27 Ill. App. 324. These cases, in principle, approve the character of the agency as applied to Ryan, that is, when Ryan received the policy delivered to him by the insurance company he still was the agent of the plaintiffs at the time he accepted the money for the premiums due the company, and as we have previously stated, was authorized to receive the unearned premium when the plaintiffs turned over the policy to him to be canceled.

There is no controverted question of fact. The evidence establishes that Ryan, the broker, acted for the plaintiffs in directing the insurance company to cancel

the policy, and the plaintiffs would be entitled to a return premium, after allowing the insurance company to retain the earned portion of the premium it had received.

Just what is meant by the credit given to Ryan for the unearned premium amounting to $1,706.66 is not altogether clear from the evidence in the record — whether Ryan retained this sum as his commission at the time the policy was delivered and therefore a credit was allowed him for this amount in order that the books of the company might show that the earned premium, together with the commission, equalled $3,417.35. The question then arises whether the liability of Ryan for this amount, which he admits he received and did not return to the plaintiffs, would bar the plaintiffs in this action by their acceptance of a note signed by Ryan and secured by collateral securities delivered by Ryan. The rule is well settled that if an agent acts for his principal outside the scope of his authority, the principal is not bound thereby, yet the principal may ratify such act and thus render it obligatory upon him. The facts do not disclose that the insurance company received more than the earned premiums it had at the time cancellation was directed by Ryan, the agent of the plaintiffs. The record also establishes that Ryan received the benefits of a sum of money—called the unearned premium—which he failed to pay to his principal. With the knowledge of the facts as they appear in the record, the principal proceeded to take credit from the agent, which was the note secured by collateral for the amount the agent had failed to return to his principal, and having all the facts in hand, and taking the steps they did, it is but reasonable to conclude that the principal ratified the act of the agent in the collection of the amount the

agent acknowledged he had received, and which was evidenced by the note. Applying this rule to the facts as they appear in the record, the plaintiffs having accepted the security and ratified the agent's act, they are not now in a position to retain the security and the collateral attached to the note of the agent Ryan and sue the defendant to recover the amount of the unearned premiums retained by the agent Ryan.

For the reasons stated the judgment is affirmed.

*Judgment affirmed.*

Denis E. Sullivan and Hall, JJ., concur.