**INSURANCE CO. OF NORTH AMERICA v. MIDWEST TRANSFER CO. OF ILLINOIS.**

No. 9890.

United States Court of Appeals. Seventh Circuit.

Dec. 7, 1949.

Michael A. Gerrard, Chicago, Ill., for appellant.

Ferre C. Watkins, Charles F. Meyers, Chicago, Ill., for appellee.

20. McCormick on Damages, § 142, p. 584.

21. 46 Yale Law Journal, 752, pp. 75–80.

Before KERNER, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a judgment for Insurance Company of North America, plaintiff, hereinafter referred to as "North America", against Midwest Transfer Company of Illinois, defendant, hereinafter referred to as "Midwest", for premiums on insurance purchased by the defendant on its motor vehicles used in its transportation business.

The complaint alleged that the defendant purchased this insurance through its agent, H. E. Cotter & Company, Inc., hereinafter referred to as "Cotter"; that plaintiff quoted to defendant's agent, Cotter, a premium rate for said insurance based on plaintiff's manual for rates; that said insurance was accepted by Cotter; and that the amount due plaintiff, based on said manual rate, was $10,025.78.

The answer of the defendant denied that Cotter acted as its agent and alleged that Cotter acted as the agent of the plaintiff in all matters pertaining to said insurance; and that the defendant had paid to the plaintiff, through said agent, all except $99,-70 of the premium, figured on the fleet rate, which was due for said insurance. The answer also denied that said insurance was at plaintiff's manual rates.

The trial court found that, throughout the entire transaction, Cotter was the agent of Midwest; that on behalf of Midwest, Cotter accepted the insurance coverage at the manual rates; that Midwest had paid Cotter the total sum of $7,000.00 on account of said insurance premiums; that neither Cotter nor Midwest had paid any amount to North America; and that North America could not calculate the premium, prepare the policy, or render its bill until July of 1947.

The sole issue presented by this appeal is whether Cotter, a licensed insurance broker, employed by Midwest to secure the insurance in question, became the agent of North America prior to or at the time he received the payment of the $7,000.00 from Midwest and prior to or at the time he accepted the insurance coverage at the manual rate from North America.

■ The question of whether the insurance broker is the agent of the assured or insurer is generally a question of fact. Middle Western Telephone Co. v. U. S. Fire Ins. Co., 296 Ill.App. 260, 16 N.E.2d 188. If the evidence supports the finding of the trial court that Cotter continued throughout this entire transaction to be the agent of Midwest, then the trial court's judgment is not erroneous and must be affirmed.

Midwest was a corporation engaged in interstate transportation by motor vehicle. In its operation Midwest used not only its own trucks but also trucks which it leased from other persons, on all of which trucks it carried fire, theft and collision insurance. The purchasing and handling of insurance for Midwest was in charge of Mr. Lipson, its secretary, who, prior to January, 1947, had procured insurance for Midwest through Cotter.

In January, 1947, the policies of Midwest, carried by the Citizens Casualty Company, were being cancelled and about the middle of that month Mr. Lipson requested Cotter to secure other insurance. Lipson left it up to Cotter to find some reputable carrier that would accept the risk. During that month Cotter, as an insurance broker, was placing insurance coverage with at least ten different companies.

In the trial court, the attorney for Midwest conceded "that Mr. Cotter didn't have a signed agency agreement with the plaintiff company; that he was a licensed broker; that he had written other insurance for our company as a broker and that when we went to him and asked him to get this insurance we went to him not as an agent of the plaintiff but as a broker. There isn't any question about that statement in the case."

After Cotter was so employed as a broker by Midwest, he first offered the insurance which Midwest desired to the Travelers Fire Insurance Company and then to the Hartford Fire Insurance Company. After both of these companies refused to write the Midwest insurance, Cotter then

contacted North America to inquire if it would be willing to write the insurance desired by Midwest. This was the first contact of North America with the Midwest insurance account.

Midwest desired to have the insurance written on a fleet rate plan, that is, a rate based on a certain percentage of the value of the motor vehicles on which the insurance was written. On January 30, the next date on which Cotter called on the officers of North America, he supplied them with a partial list of the Midwest vehicles to be covered and was told that the North America would only write the insurance on a manual rate plan, a plan whereby the rate was determined on each individual vehicle after an inspection of the same, determination of the age, type and use of each vehicle. On that date Cotter accepted the coverage at such manual rate as might be later determined by North America after its inspection of the defendant's motor vehicles and ascertainment of their use in long or short haul operation.

No written binder was issued on that date but North America did issue an oral binder which Cotter accepted.

On March 3, 1947, Cotter requested and received from Midwest a deposit of $2,000.00 on the premiums for said insurance. A week later, March 10, 1947, North America issued a written binder for coverage in which no rate was stated.

On March 31, 1947, Lipson received a telegram, signed "H. E. Cotter & Company, Inc.," which telegram stated that, "Filings will be completed Tuesday. Fire and theft rate one and one-quarter percent and collision eight percent." Cotter testified that he assumed the telegram had been sent by his company, but that he knew nothing about it. North America never quoted such rates to Cotter for the Midwest coverage.

May 21, 1947, at Cotter's request, Midwest paid Cotter an additional $5,000.00 on the premiums on said insurance.

Cotter paid no part of the $7,000.00 he had received from Midwest to North America, nor did Midwest make any pay-ments directly to North America on account of said insurance.

On May 7, 1947, North America, by letter informed Cotter that the Midwest insurance was being cancelled, to become effective May 12, 1947. Cotter negotiated two extensions of the cancellation date, first to May 15, and again to May 20, 1947.

Due to the fact that lists of additional motor equipment to be covered was brought in by Cotter, from time to time, the rate and the total amount of the premiums on said coverage was not finally determined until in July, 1947, nor was the insurance policy covering the motor vehicles delivered to Cotter until in July, 1947.

During the time the insurance was in force losses thereunder occurred on which North America paid a total of $3,179.44. During the entire period here in question Midwest and North America never dealt directly with each other. Each dealt only with Cotter.

Cotter never had any written or verbal agency agreement with North America nor did he ever hold a license to act as agent for North America.

 Most of the above statements of fact are admitted. The remainder are based on credible evidence or on inferences which could reasonably be drawn from the evidence. It is true that on some of the above statements there was a conflict in the evidence and the trial court might have drawn different inferences on some of the facts. However, it is the function of the trial court to decide, as between conflicting testimony, which to believe, and as between reasonable inferences, which one to draw.

The Illinois Insurance Code, under which Cotter's license was issued, defines an insurance broker as one who, for commission, "acts or aids in any manner in the solicitation or negotiation, on behalf of the assured, of contracts" of insurance. Chap. 73, § 588, Ill.Rev.Stats., State Bar Ed., 1947.

Midwest admits that it knew that Cotter was an insurance broker; that on numerous occasions prior to this time it had dealings with him as an insurance broker, that in this case it employed him as a brok-

er to procure this insurance for it and left to him the choice of the company from which the insurance was to be purchased.

Midwest insists, however, that an agency may arise by implication where the insurance company has clothed the agent with apparent or ostensible authority to act for and in its behalf. With this general statement we agree, but we can not agree that the general statement is applicable to the facts of this case. Here North America did not clothe Cotter with apparent or ostensible authority.

The defendant cites Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545, as authority for the proposition that a broker could, under certain facts and circumstances become the agent for the insurance company, although he originally had solicited the insurance from the insured. With this general statement we must also agree. But the facts of that case are entirely different from the facts with which we are here confronted. There the broker represented himself to the assured as an agent of the insurance company. He examined the property to see if the risk would be a safe one. He conducted himself in all respects as an agent clothed with authority to act and after he had agreed with the plaintiff to insure her property he returned with a policy properly executed and ready for delivery. The plaintiff accepted the policy and paid the premium in good faith, believing that the broker was the agent of the insurance company. In that case the court said, 90 Ill. at page 548: "It is doubtless true that if the plaintiff had paid the premium to (the broker) at the time knowing that he was not the agent of the company, but only a street insurance broker the policy could not be enforced if the (broker) failed to pay over the money."

In the instant case the Midwest employed Cotter, knowing him to be a broker, as its agent to find an insurance company which would accept its business. It paid Cotter $7,000.00 to be applied on the insurance premiums. Part of this money was paid to Cotter before he ever received even a written binder from the insurance company. The remainder of the money was paid to Cotter long before North America could calculate and bill the premiums and before it delivered the policy. Neither payment was made to Cotter in exchange for an insurance binder or an insurance policy or because of any indicia of agency which North America had given him.

The Midwest's second proposition of law, on which it relies, is that "Cotter was authorized to quote the rate." Whether Cotter was or was not authorized to quote the rate was a question of fact on which the trial court found against the defendant. The finding of the trial court was sustained by ample evidence. Unquestionably when Cotter first contacted North America he did so as an insurance broker who had been employed by Midwest as its agent. Cotter went to the office of North America and negotiated with its officers as the agent for Midwest and on their behalf. In the very early negotiations he was definitely informed, according to his own testimony and according to the testimony of officers of North America, that North America would not be interested in writing insurance for Midwest except on a manual rate. Long before Midwest received the telegram signed by Cotter's company, he, as the agent of Midwest, had agreed that the insurance should be written on a manual rate. Prior to that agreement he had delivered no binder to Midwest or been given any "apparent or ostensible authority to act for or on behalf" of North America. Here, as in France v. Citizens Casualty Company, 400 Ill. 55, 58, 79 N.E.2d 28, when Cotter accepted the proposition of North America to write the Midwest insurance on the manual rate and when he later accepted the binder and policy for Midwest "he accepted it in the roll of agent for (Midwest) and was engaged in consummating the deal for which he had been employed" by Midwest.

Midwest, in its brief, in summarizing the reasons why the judgment of the trial court should be reversed, said that "The plaintiff, by delivering the policy to Cotter and by billing the premium to Cotter, clothed him with apparent authority to collect the premium. The loss of the $7,000.00 which the defendant paid to Cotter in reliance

upon his apparent authority, should, therefore, be borne by the plaintiff." The fallacy in this statement is that Midwest paid the $7,000.00 to Cotter long before the policy was issued or the premium billed. Midwest, therefore, could not have been relying on such alleged apparent authority when it paid the money to Cotter. Tri-City Transportation Co., Inc., et al. v. Bituminous Casualty Corp., 311 Ill.App. 610, 615, 37 N.E.2d 441.

We have carefully reviewed the evidence in this case and are of the opinion that it is sufficient to sustain the findings and conclusion of the trial court that throughout this entire transaction Cotter continued to be and act as the agent of Midwest.

The judgment of the trial court is affirmed.