Albin Karetzkis, Plaintiff-Appellant, v. Cosmopolitan National Bank, etc., et al., Defendants Below, Cosmopolitan National Bank, William H. Suchier and Arlyne Hamil, Defendants-Appellees.

Gen. No. 48,725.

First District, First Division.

October 29, 1962.

Arthur Abraham and Harry George, of Chicago, for appellant.

Samuel S. Cohon and Wexler & Wexler, of Chicago (Samuel S. Cohon, of counsel), for William H. Suchier and Arlyne Hamil, certain defendants-certain appellees.

Walter D. Gainer, of Chicago, for Cosmopolitan National Bank, certain defendant-certain appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a proceeding for the foreclosure of a trust deed. Plaintiff, Albin Karetzkis, appeals from a decree, entered upon a master's report, dismissing the complaint for want of equity.

In January, 1953, plaintiff, in response to an advertisement and after consulting his friend and attorney, defendant Francis D. McGuire, purchased the subject $12,500 promissory note and trust deed for $6,000. The unpaid principal balance was $7,300. The trust deed and installment note, both dated February 22, 1950, were executed by Arthur C. Cimaglia. The security was 1367 North Sedgwick Street, Chicago, improved with a 4-story brick building, containing stores and apartments. A photograph in evidence indicates it was built in 1882. On January 8, 1953, plaintiff and Cimaglia entered into an extension agreement, providing for monthly installments.

On August 3, 1953, Cimaglia died intestate, and letters of administration for his estate were issued by the Probate Court of Cook County. Subsequently, on February 2, 1956, by way of a proceeding to sell real estate to pay debts, the interest of the decedent in the real estate was conveyed to defendant Walter D. Gainer, for $150, subject to outstanding obligations of $19,640.99, and unpaid taxes since 1948. Thereafter, the legal title was placed in a land trust, with defendants Walter D. Gainer and William H. Suchier as joint beneficiaries, and the defendant Cosmopolitan National Bank of Chicago as trustee.

In July or August of 1953, as the note was in default, plaintiff delivered to McGuire, as his attorney, the mortgage papers and a fee of $400, with instruc-

tions "to start collecting on that debt for me," and McGuire told him he was going to start foreclosure proceedings. McGuire never commenced foreclosure proceedings and, although plaintiff in the following three years frequently demanded his mortgage papers, McGuire never returned them.

Early in 1957, plaintiff retained another attorney, Harry George. He then, for the first time, learned that in August, 1956, McGuire had sold and delivered the mortgage papers to defendant Gainer for $5,000. Gainer had delivered to McGuire two checks, totalling $5,000. One check was a cashier's check, dated December 16, 1955, for $4,500, and was restrictively endorsed to plaintiff. The other check, for $500, dated August 6, 1956, and payable to plaintiff, has typed across the face thereof "Balance in full for first mortgage on 1367–69 N. Sedgwick Street." Plaintiff further learned that McGuire had forged plaintiff's signature to the two checks and wrongfully appropriated the funds. In exchange for the checks, McGuire gave to Gainer the mortgage papers and an assignment of the trust deed, purporting to bear the signature of plaintiff. The assignment was dated and acknowledged before a notary public on August 6, 1956.

Plaintiff commenced the instant proceedings in March, 1957. He also filed a petition in bankruptcy against McGuire and went to the State's Attorney's office and complained about McGuire having forged his name on the two checks. He signed a complaint and a warrant was issued for McGuire in connection with the purported forgery of plaintiff's signature.

An amended and supplemental complaint, filed July 17, 1957, in substance alleges that defendant McGuire fraudulently sold the mortgage papers and forged plaintiff's signature to checks totalling $5,000, and wrongfully appropriated the funds; and that plaintiff

487

had demanded, from certain of the defendants herein, the return of the mortgage papers. Primarily, the relief sought was in the alternative: (1) foreclosure of the trust deed and note, or (2) that McGuire be required to pay to plaintiff "the sum of $5,000, interest and costs, as a result of the wrongful misappropriation of said funds and the failure to pay said funds to the true owner thereof."

On July 17, 1957, an order was entered in the proceedings, which recited that it was entered in compromise and settlement of the claim of plaintiff. All defendants except McGuire were dismissed without costs, and judgment was entered against McGuire and in favor of plaintiff for $5,000, with a finding that malice was the gist of the action. Subsequently, on July 24, 1957, an order was entered, deleting that part of the prior order which dismissed all defendants except McGuire.

Thereafter, plaintiff's attorney, Harry George, accepted from McGuire's attorney, Herbert Wetzel, a cashier's check, dated August 5, 1957, for the sum of $5,000, and payable to plaintiff's order. This check, endorsed in blank by plaintiff, was deposited in the account of Harry George, plaintiff's present attorney. On August 8, 1957, garnishment proceedings, then pending in the instant case on the McGuire judgment, were dismissed by a stipulation entered into by Harry George, attorney for plaintiff, and Herbert Wetzel, who was the attorney for McGuire.

On March 4, 1958, the cause was referred to a master in chancery for hearing, and his report was filed June 13, 1961. A decree, entered December 6, 1961, approved and confirmed the master's report in all respects, and found that defendant Suchier was the legal and equitable owner of the subject note and trust deed, and "that the said Trust Deed was properly released of record." It also found that a tax deed for

488

the premises, issued to Arlyne Hamil (nominee of Suchier) on October 5, 1959, created a new and paramount title to the property, in fee simple, in Arlyne Hamil, "free and clear of all claims of every kind or nature by any of the parties to this proceeding." The amended and supplemental complaint was dismissed for want of equity. It is from this decree that plaintiff has appealed.

The contentions of plaintiff are (1) that defendants Gainer and Suchier acquired no title to the trust deed and note from McGuire, as he had no authority to sell or assign; (2) that none of the circumstances relied upon to show apparent authority in McGuire were ever communicated to Gainer or Suchier, or relied upon by them; (3) that the attempt of plaintiff to collect $5,000 from McGuire, and its ultimate collection, has no tendency to show ratification of the sale of the trust deed and note to Gainer and Suchier; also, that plaintiff tendered the $5,000 to Gainer and Suchier in open court, for the trust deed, note, and assignment of rents; and (4) that Arlyne Hamil, as the nominee of Suchier, could not by her trust deed acquire an interest superior to the lien of the trust deed securing the note. On all of these points the decree is adverse to plaintiff.

██ ██ We agree with plaintiff that authority to prosecute a suit does not involve authority to compromise it. Before an attorney can compromise a suit, he must have special authority for that purpose. (Danziger v. Pittsfield Shoe Co., 204 Ill 145, 149, 68 NE 534 (1903).) He has no power to assign or sell a claim or judgment of his client without special authority. (Schroeder v. Wolf, 227 Ill 133, 136, 81 NE 13 (1907).) Similarly, in a case in which liability of a principal for the acts of another is sought to be predicated upon the apparent authority of the latter to act for the former, the rule is that the party dealing with

the agent must prove that the facts giving color to the agency were known to him when he dealt with the agent. If he has no knowledge of such facts, he does not act in reliance upon them and is in no position to claim anything on account of them. (Alton Mfg. Co. v. Garrett Biblical Institute, 243 Ill 298, 312, 90 NE 704 (1910).) However, the above rules are not determinative here.

■ We believe the decisive question is whether the activities of plaintiff constitute a ratification of the sale of the mortgage papers by McGuire. The master found that plaintiff ratified the sale of the mortgage by his collection, from McGuire, of the $5,000 proceeds of the sale and by "the pressing of criminal charges against McGuire for forgery of the checks," and that "the record shows . . . a desire and intention of plaintiff to ratify the sale by McGuire and to accept $5,000 in lieu of the note and trust deed."

It is the rule in Illinois that "if an agent acts for his principal outside the scope of his authority, the principal is not bound thereby, yet the principal may ratify such act and thus render it obligatory upon him[self]." (Middle Western Tel. Co. v. United States Fire Ins. Co. of New York, 296 Ill App 260, 265, 16 NE2d 188 (1938).) "Such subsequent assent and ratification would be equivalent to an original authority, and confirm what was originally an unauthorized and illegal act." Hefner v. Vandolah, 62 Ill 483, 485 (1872).

■ Ratification may be express, or it may be inferred from circumstances which the law considers equivalent to an express ratification. In the latter sense, ratification may be found to have taken place when the principal, with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with nonaffirmation of the transaction. An example of such ratification is for the principal

to seek or retain the benefits of the transaction. Thus, it is ratification if the principal, with knowledge of the facts, sues the third party or the agent "to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of the transaction and to which he would be entitled only if the act had been authorized." Restatement (Second), Agency, § 97(a) (1958). This rule has been followed in Illinois: see, e. g., Bailey v. Pardridge, 134 Ill 188, 27 NE 89 (1890); Vetesnik v. Magull, 347 Ill 611, 180 NE 390 (1932).

We agree with the conclusion of the master that the actions of plaintiff, previously detailed, amount to a ratification of the sale of the mortgage papers. While plaintiff's complaint sought relief in the alternative, asking either foreclosure of the trust deed or payment of the $5,000 by McGuire, plaintiff actually did collect the $5,000 from McGuire. We think that this behavior, under the circumstances, is a ratification of the alleged unauthorized sale.

■ Plaintiff argues that no ratification occurred because he immediately tendered the $5,000 to defendants and has since remained ready to reimburse defendants upon their return of the mortgage papers to him. It is undoubtedly the rule that "receipt of these benefits with full knowledge of the material facts relating to the source of the benefits and the manner of acquisition, constitutes a ratification of [the agent's unauthorized act] *unless* the principal returns the benefits and repudiates the act within a reasonable time." (Emphasis supplied.) (Buford v. Chief, Park Dist. Police, 18 Ill2d 265, 270, 164 NE2d 57 (1960).) However, this rule is inapplicable here, where plaintiff, from the beginning of these proceedings, over a period of months, took many affirmative steps, as "the true owner," to secure the funds of the alleged unauthorized sale. This was full and irrevocable ratification.

■ Plaintiff makes an additional argument to negate the finding of ratification. McGuire is alleged to have owed plaintiff "many thousands of dollars" from other transactions with McGuire over a period of years; plaintiff's contention is that he was free to apply the $5,000 collected from McGuire to any part of this indebtedness, under the rule that a creditor may apply a debtor's payment on account to any portion of the debt due in the absence of specific agreement with the debtor to the contrary. (Liese v. Hentze, 326 Ill 633, 639, 158 NE 428 (1927).) This argument is inconsistent with plaintiff's argument as to tender, since the tender—in plaintiff's view—is necessary *only* if the $5,000 received from McGuire was the consideration paid to McGuire for the mortgage papers. To argue that the $5,000 was paid merely as a general installment on account of other debts is to ignore the record in this case.

We have determined that the finding of ratification is sufficient to support the instant decree. Therefore, it is unnecessary to consider, determine, or pass on the contention of plaintiff that the tax deed of Arlyne Hamil is not superior to the lien of the trust deed securing the note.

For the reasons stated, the decree dismissing the complaint for want of equity is affirmed.

Affirmed.

BURMAN, P. J. and ENGLISH, J., concur.