BEATRICE CHAPPELL, Plaintiff-Appellant, *v.* FREDERIC J. JUERGENS, Defendant-Appellee.

(No. 56258;

First District (1st Division)—April 16, 1973.

Sydney N. Pearl, Morris D. Whitney, and Frank, Levin & Rubin, all of Chicago, for appellant.

John A. Hutchings, James J. Hoffnagle, and Alfred C. Tisdahl, Jr., all of Chicago, (Taylor, Miller, Magner, Sprowl & Hutchings, of counsel,) for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

This was a suit for common law negligence which was heard in a bench trial. At the close of the plaintiff's case the trial judge found that the plaintiff was guilty of contributory negligence as a matter of law and entered judgment for the defendant. The sole issue is whether the judge could properly make such a finding at the close of the plaintiff's case.

The evidence offered by the plaintiff consisted of certain medical bills, the testimony of the plaintiff and an exhibit identified as a Traffic Signal Timing Schedule prepared by the City of Chicago Bureau of Street Traffic purporting to show, among other things, the location of traffic signals at the intersection of Melrose Avenue, Sheridan Road and Lake Shore Drive. The answer of the defendant admitted that he was driving in a northerly direction on Lake Shore Drive and was in the process of turning left to go west on Melrose Avenue on the day of the accident, April 14, 1965.

The plaintiff testified that she left her employer's apartment at 3240 Lake Shore Drive a little before 8:00 P.M. She left the Melrose Avenue side of the building and walked to the corner of the intersection of

Melrose and Lake Shore Drive. It was raining. She started across Melrose going south from the northwest corner; she was in the painted crosswalk; when she was about three-quarters of the way across the street she heard a car sound; she loooked to her left and then was hit by the defendant's car. There was a traffic control device at the southwest corner. She said: "*  *  * There was a walk light. The walk light was on for me as I started to cross Melrose." The walk light did not change at any time as she was crossing Melrose. She was knocked about ten feet and wound up near the south curb of Melrose.

On cross-examination she said that she was carrying an umbrella over her head at the time; the traffic was stopped as she started across Melrose; when asked if she noticed traffic going north or south on Lake Shore Drive, she said: "I noticed traffic going south." It was then stipulated that she had testified at her deposition on September 3, 1969, as follows:

"Q. When you got at the corner of Lake Shore Drive and Melrose, you would be on the northwest corner; is that correct?
A. That is correct.
Q. And you would be facing south going toward Melrose?
A. I would be facing south.
Q. Was there a traffic light on the other corner; that would have been on the southwest corner?
A. Yes.
Q. What color was the light for you?
A. Well, red.

*  *  *

Q. When you started to cross, was the light green?
A. You mean, when I crossed Melrose?
Q. When you started across Melrose, yes.
A. The light was red.
Q. What did you do? Step out into Melrose on a red light?
A. Yes.

*  *  *

Q. And at Lake Shore Drive is Melrose a one-way westbound street?
A. Melrose is a one-way street east.
Q. Toward the lake?
A. Coming into the lake.
Q. Toward the lake?
A. Yes, yes. Am I right or am I wrong?"

On re-direct examination she was asked what color the traffic light on the southwest corner was when she "reached the corner, before [she]

started across." She answered: "I don't know; I don't remember. I only remember the walk light."

Before resting, the plaintiff's attorney informed the court that he had issued a subpoena for a traffic engineer who had the original of the traffic time schedule. He told the court he wanted a recess until the afternoon so he could get the engineer "in to testify as to the time schedule." The court said: "Let me see it. I can't see how this is going to help you." When the defendant's attorney said he had no objection, the exhibit was received. The plaintiff then rested. Her attorney argued that the exhibit showed that northbound cars can make left-hand turns off Lake Shore Drive onto Melrose at the same time that pedestrians are crossing Melrose. Therefore, since the plaintiff saw no cars going north or south, the exhibit demonstrated that she could not have seen a red light because the one device facing her was a walk sign. Moreover, he maintained, the deposition testimony is not evidence, but could "only impeach her testimony." The plaintiff has apparently abandoned this latter argument in this court. He does, however, still urge that the exhibit leaves no doubt that the plaintiff's deposition testimony was incorrect and, he now adds, she misunderstood the question.

■■ First, the exhibit does not erase any question of the condition of the light at the time the plaintiff crossed the street. Rather, it begs for expert explanation. It contradicts the plaintiff's testimony that Melrose was one-way at the intersection; it shows that Melrose becomes one way westbound starting approximately 250 feet west of Sheridan. The box marked "A" shows arrows indicating when northbound traffic may make left-hand turns to go west onto Melrose. The conclusion is not inescapable to us from the box marked "A" and the other cryptic entries on the exhibit that the light facing the plaintiff could not have been red when she was struck. It is apparently undisputed, judging from the arguments of counsel, that the walk signal cannot be facing the pedestrian at the same time a red light is facing the pedestrian.

Second, if she misunderstood the question asked at the deposition, there was no attempt either at the deposition or at trial to explain or modify her answer and thus rehabilitate her testimony.

Therefore, the sole question is whether the trial judge had the right to weigh her testimony and reject it at the close of the plaintiff's case. We conclude that he did. The Civil Practice Act provides:

"(5) In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding, judgment or decree in his favor. In ruling on the motion the court shall weigh the evidence. * * *," Ill. Rev. Stat. 1971, ch. 110, par. 64(5).

■■ It is now well settled that a trial judge may weigh the evidence in ruling on a motion for a finding at the close of the plaintiff's evidence in all cases, and he need not view the evidence in the light most favorable to the plaintiff. *Allfree v. Estate of Rosenthal,* 113 Ill.App.2d 90, 251 N.E.2d 792; *Miller v. Heller,* 106 Ill.App.2d 383, 246 N.E.2d 150; *Brubaker v. Gould,* 34 Ill.App.2d 421, (Dissenting Opinion) 440-450, 180 N.E.2d 873.

■■ In determining the propriety of a trial court's ruling on a motion based on section 64(5), the standard to be used by an appellate court is whether it is manifestly erroneous. (*Bilyeu v. Plant,* 75 Ill.App.2d 109, 220 N.E.2d 513.) In this case, the trial court could have concluded that, since the plaintiff mistakenly thought Melrose was one way eastbound, she neglected to look to her left and that she started across Melrose while the light facing her was red. Even accepting the contention of the plaintiff that the exhibit shows that left-hand turns may be made by northbound traffic only when the light is green, we cannot say that the trial court was incorrect. Not all left-hand turns are made in one continuous movement. Quite often automobiles are required to stop in an intersection before turning because of traffic traveling in the opposite direction; and then turn after the light turns red. Based on this evidence, we cannot say that the trial court's ruling on the motion was manifestly erroneous.

■■ The record does not support the plaintiff's contentions that the expert was prevented from testifying. The plaintiff argues that this was a "case in which the knowledge and understanding of the location and timing of traffic signals is essential to a proper finding." Yet after the exhibit was received, the plaintiff rested without any further request made to the court to continue the matter until the expert could be brought in.

For these reasons the judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.