CRAWFORD SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellant, *v.* PAULINE DVORAK, Defendant-Appellee.

First District (3rd Division) Nos. 60966, 61261 cons.

Opinion filed July 1, 1976.

Gomberg & Sharfman, Ltd., of Chicago (David L. Gomberg, Robert J. Sharfman, and Lawrence A. Gold, of counsel), for appellant.

Frank J. Hucek, of Berwyn, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Crawford Savings and Loan Association, brought an action in the circuit court of Cook County for foreclosure of a mortgage and trust deed allegedly executed by defendant, Pauline Dvorak. Defendant filed an answer denying the allegations of the complaint and claiming forgery as to the mortgage and as to all other alleged encumbrances. Additionally, defendant filed a counterclaim seeking an order of quiet title to real estate and also asking damages under a negligence theory. Other alleged lienholders, initially named in the action, eventually were dismissed from the case. A trial without a jury was held and at the close of plaintiff's case, the trial court sustained defendant's motion for findings and entered judgment in her favor. Thereafter, hearings on the counterclaim were held and the court entered an order removing the purported mortgage as a cloud on defendant's title. The court denied defendant's counterclaim for damages on the grounds that her own negligence contributed to the injury. Plaintiff has appealed the order sustaining defendant's motion for findings and judgment. Defendant has filed a cross-appeal from the trial court's order denying her damages.

The facts are largely undisputed. In August or September of 1964, a middle-aged woman appeared at plaintiff's offices and applied for a mortgage loan of $30,000 on real estate located at 4379 West 26th Street in Chicago. The woman was alone and she spoke with James R. Krebs, plaintiff's loan officer. She introduced herself as Pauline Dvorak, a widow and sole owner of the 26th Street property. During this meeting Krebs filled out a loan application with information furnished by the applicant. She gave her age as 47, said she was owner of Dvorak's restaurant located in her building, and supplied credit references. The woman signed the credit application as "Pauline Dvorak." She gave the telephone number of the restaurant and told Krebs to contact her personally on matters concerning the loan. The applicant offered no identification or personal references and none were requested by Krebs. The space on the credit application requesting the names of "friends or relatives" was left blank because Krebs did not believe such information was needed.

The individual who applied for the mortgage loan was not defendant. She was Hedwik Kubert, defendant's daughter. Mrs. Kubert resided with

her husband in a second floor apartment on the premises and worked in the restaurant owned by defendant. Defendant, then 68 years old, resided in an apartment on the ground floor off the restaurant.

After receiving the loan application plaintiff ordered a credit report on Pauline Dvorak. Plaintiff's agents placed several telephone calls to the number listed on the application and spoke to an individual representing herself to be defendant. A title insurance company inspector visited the premises and was met by a middle-aged woman who identified herself as the owner, Pauline Dvorak. Based on a credit report, the inspection, and conversations with the applicant, the mortgage loan to Pauline Dvorak was approved by plaintiff.

On October 13, 1964, Hedwik Kubert appeared at plaintiff's offices to sign the note and mortgage papers. Krebs, a notary public, took Kubert's acknowledgement of the mortgage documents and certified, over his own signature, that the signer was personally known to him to be Pauline Dvorak, the person whose name was subscribed in the instrument. The loan proceeds of $30,000 were disbursed by plaintiff on October 20, 1964.

For seven years following disbursement of the loan proceeds, regular monthly mortgage payments were received by plaintiff. The payment checks were drawn on Dvorak Restaurant's account at Lawndale Bank and signed Pauline Dvorak. During this period plaintiff mailed some 239 pieces of correspondence to defendant at the restaurant address. These included a payment book, insurance forms, tax material, and other mortgage related matter. On several occasions plaintiff's agents telephoned the restaurant and spoke to a woman identifying herself as Pauline Dvorak. In October 1971, the monthly loan payment was not made and the following month Hedwik Kubert disappeared. No further payments were made. Plaintiff, investigating the debt, encountered defendant who denied any knowledge of the transaction. Defendant testified that she had no knowledge of the mortgage and that she had received none of the correspondence.

In its initial complaint, plaintiff alleged that defendant signed the mortgage which it sought to foreclose. Thereafter plaintiff conceded that defendant's signature was forged by Hedwik Kubert and, in an amended complaint, charged defendant with conspiring to commit and conceal the forgery. Plaintiff additionally charged that defendant, by failing to notify it of the forgery, ratified the transaction and was estopped from denying the validity of the mortgage documents. At the close of plaintiff's case the trial court found that the signature on the note and mortgage were forgeries; that the certificate of acknowledgement of the notary was false; and that the forgeries were made possible by defendant's negligence.

As plaintiff's right to foreclosure is based on the note and mortgage agreement, we first must consider whether there was sufficient evidence

to show that the documents bear the legal signature of defendant. Plaintiff contends that express and apparent authority in Kubert to bind defendant was shown by the evidence, and that the trial court erred in entering judgment for defendant and in removing the mortgage as a cloud on title.

■■ An agency relationship existed between defendant and Hedwik Kubert, but an issue remains as to the scope of the latter's authority. The evidence is as follows. Defendant, for many years, owned and was the sole proprietor of Dvorak's Restaurant. In 1961, after an illness, she decided to confine herself to running the restaurant's kitchen and conferred authority on Kubert to manage the business. Kubert ordered food and liquor, applied for liquor licenses, made insurance claims and signed tax returns in defendant's name. Kubert handled cash, examined bank statements and opened mail delivered to the restaurant. There is no dispute as to this aspect of her authority. Such express managerial authority, reasonably interpreted, authorizes the agent to do all things necessary and proper in carrying out the business in its usual and accustomed way. We do not view such authority, however, to empower the agent to transact matters of extraordinary business, such as mortgaging the premises in which the business is located. (See *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.) Indeed, we can conceive of no circumstances under which express authority to manage a business could be extended to include such a transaction.

Similarly, a written power of attorney executed by defendant in 1963 did not establish actual authority to execute the note and mortgage. A written power of attorney must be strictly construed so as to reflect the clear and obvious intent of the parties. (*McHarry v. Bowman* (1934), 274 Ill. App. 487.) The power of attorney, given by defendant to Kubert in 1963, authorized Kubert to sign checks drawn on funds in defendant's account on Lawndale Bank. The document, a regular banking form for signature authorization, pertains exclusively to transactions of checks on defendant's account at the bank and in no manner authorized Kubert to bind defendant on a mortgage. The facts contained in the record do not prove the existence of express authority in Kubert to bind defendant on a note or mortgage.

■■■ Plaintiff next contends that the evidence warrants application of the doctrine of apparent authority and that defendant should be estopped from denying the validity of Kubert's agency. Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf. (*Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 204 N.E.2d 802.) The principal, having placed the agent in a situation where he may be presumed to have authority to

act, is estopped as against a third person from denying the agent's apparent authority. *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 334 N.E.2d 431.

Plaintiff asserts that defendant, by allowing Kubert to manage her business and act in her name, vested the agent with apparent authority to execute the mortgage. The evidence, however, indicates that plaintiff was unaware that any agency relationship existed between defendant and Kubert, and at all times dealt with Kubert as a principal. Plaintiff's officer testified that the mortgage was approved on the strength of Kubert's office visits and credit report and that no other considerations influenced the decision. Krebs stated that if Kubert's true identity had been revealed, the loan proceeds would not have been disbursed.

Where liability of a principal is sought to be predicated on apparent authority, the party dealing with the agent must prove that facts giving color to the agency were known to him when he dealt with the agent. (*Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 186 N.E.2d 72.) If the third party did not know or rely on such facts, then he may not claim anything on account of them. There is no evidence that plaintiff had any knowledge of or contact with defendant regarding the mortgage transaction. Plaintiff's own evidence indicates that it neither knew of nor relied on Kubert's alleged apparent authority in approving the mortgage and disbursing the funds. Under these circumstances, recovery under a theory of apparent authority cannot be had.

■■ In so holding, we reject plaintiff's argument that apparent authority existed by virtue of telephone conversations between plaintiff's loan department and Kubert on defendant's business telephone. One dealing with a business concern by telephone has the right to assume that the individual answering the telephone has the authority to transact the business conducted. (*Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12.) The business in the present case was a restaurant and by allowing Kubert unlimited access to the telephone, defendant vested her with apparent authority to transact ordinary and usual restaurant business. A loan and mortgage transaction, involving the building in which the restaurant is located, does not constitute restaurant business. Plaintiff had no right to assume that the individual answering the restaurant telephone was authorized to speak for defendant on such a matter.

Even absent a showing of actual or apparent authority, plaintiff maintains that it proved defendant conspired with Kubert to obtain the loan proceeds and to conceal the forgery. In light of the correspondence and telephone calls directed to defendant at her business, plaintiff urges that her claimed ignorance of the mortgage transaction is patently incredible.

The record indicates that, over a seven year period, plaintiff sent a great deal of correspondence addressed to defendant at her restaurant. On a number of occasions plaintiff's agents telephoned defendant's restaurant and spoke to a person identifying herself as defendant. A title insurance inspector also visited the premises. Defendant, however, stated she had no knowledge of the mortgage until after her daughter disappeared in 1971. She testified, and it is uncontroverted, that her daughter opened all mail delivered to the restaurant; that her daughter, after receiving the money from defendant, mailed defendant's real estate tax bills; and that the daughter signed all the checks to plaintiff in defendant's name. Plaintiff conceded that signatures appearing on insurance claims were not those of defendant and appeared to be the same as the forged signatures on the mortgage documents. The title insurance inspector and other witnesses who had contact with "Pauline Dvorak" in the present mortgage transaction testified that they spoke with a middle-aged woman who was not defendant.

■■ In cases tried without a jury, the trial judge, in deciding a defendant's motion for judgment at the close of plaintiff's case, shall weigh the evidence. (Ill. Rev. Stat. 1973, ch. 110, par. 64(3); *Allfree v. Estate of Rosenthal* (1969), 113 Ill. App. 2d 90, 251 N.E.2d 792.) In such instances, the court need not view the evidence in the light most favorable to plaintiff (*Chappell v. Juergens* (1973), 11 Ill. App. 3d 469, 297 N.E.2d 270) and, unless manifestly erroneous, its determination will not be disturbed on review. Here, the court believed defendant's assertion that she was deceived by her daughter and that despite numerous contacts addressed to her by plaintiff, she remained in ignorance of plaintiff's purported mortgage interest. The trial court's determination finds substantial support in the record, and it did not err in granting defendant's motion for findings and judgment at the close of plaintiff's case.

We now turn to defendant's cross-appeal and consider whether the court erred in denying defendant's counterclaim for damages. Count II of the counterclaim, based on negligence, charged plaintiff with accepting, recording, and asserting a mortgage against defendant's property without inquiring as to the identity of the maker. The counterclaim further charged that defendant was required to incur attorney's fees to defend her title and prayed for an award of actual and exemplary damages. After entering judgment in favor of defendant on the foreclosure action and after removing the mortgage as a cloud on title, the trial court conducted a hearing on the damage count. The only item of damage proved was the legal fee incurred by defendant in this case. The parties stipulated that $10,500.00 was a reasonable fee for the time spent. After hearing arguments and considering all the evidence adduced at trial, the trial

court entered an order finding defendant guilty of contributory negligence and denied her claim for damages.

■■ Contributory negligence on the part of the injured party constitutes a bar to recovery in a negligence action. (*Hermann v. City of Chicago* (1973), 16 Ill. App. 3d 696, 306 N.E.2d 516.) Since the finding of contributory negligence has ample support in the record, the trial court correctly denied defendant's counterclaim for damages.

For all the reasons stated, the judgments of the circuit court of Cook County finding in favor of defendant in the foreclosure action, removing the purported mortgage as a cloud on defendant's title, and denying monetary damages to defendant on her counterclaim are affirmed.

Judgments affirmed.

MEJDA, P. J., and DEMPSEY, J., concur.