Paul JENCO, d/b/a Acre Inn, Plaintiff,

v.

JEFFERSON INSURANCE COMPANY OF NEW YORK; Cupac, Inc.; Glenn Rousseau Company, Inc.; and James Confer, Defendants.

JEFFERSON INSURANCE COMPANY OF NEW YORK, Cross-Plaintiff,

v.

STATE BANK OF HERSCHER, Cross-Defendant.

No. 83 C 0674.

United States District Court, N.D. Illinois, E.D.

Nov. 21, 1983.

George Barr, Codo, Bonds, Zumstein & Konzelman, P.C., Joliet, Ill., for plaintiff.

Richard A. Buchanan, Clausen, Iller, Gorman, Caffrey & Witous, Lawrence K. Rynning, Chicago, Ill., Thomas Judd, Kankakee, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

██ Plaintiff, Paul Jenco, d/b/a Acre Inn ("Jenco"), sued the Jefferson Insurance Company of New York ("Jefferson"), Cupac, Inc. ("Cupac"), Glenn Rousseau Co. and James Confer[1] in the Circuit Court of Will County for a sum representing the damages incurred from a fire, payable to Jenco under an insurance policy issued by Jefferson. Jefferson removed the action to this Court. Presently before the Court are: Cupac's motion for summary judgment; Jefferson's motion for summary judgment; and Jefferson's motion for summary judgment on its cross-claim for a declaratory judgment against the State Bank of Herscher ("Herscher").[2] For reasons set forth below, Cupac's motion for summary judgment is granted; Jefferson's motion for summary judgment is denied; and Jef-

ferson's motion for summary judgment on its cross-claim is denied.

Jenco owned a building in which he operated a restaurant, the Acre Inn, located at Route 115, West 1600 South in Buckingham, Illinois. Fire destroyed the building on January 8, 1982. On April 28, 1981, Jefferson executed and delivered to Jenco an insurance policy covering the building, the personal property therein and any loss of earnings—from the restaurant due to the destruction of the premises.

On or about that same date, Jenco borrowed $66,800 from Herscher and executed a note in that amount, secured by a mortgage on two tracts of land in Buckingham. Herscher was listed as mortgagee on the insurance policy issued by Jefferson to Jenco. On or about May 5, 1981, Jenco and Cupac entered into an agreement whereby Cupac would finance the premium for Jenco's insurance policy with Jefferson. Jenco now claims that the premium finance agreement lacked a properly executed power of attorney enabling Cupac to cancel the underlying insurance contract: he also disavows any signature appearing on the agreement with Cupac. Jenco also alleges that Cupac cancelled the underlying insurance contract without sending him ten days written notice of their intent to cancel, as required by Ill.Rev.Stat. ch. 73 ¶ 1065.68.

On May 7, 1981, the real property securing the $66,800 note was conveyed to Trust No. 1058 at Herscher. Jenco assigned all beneficial interest in Trust No. 1058 to Herscher on July 10, 1981; on that same date, Herscher as trustee of Trust No. 1058 borrowed $30,000 from the State Bank of Herscher. The bank executed a note in that amount, which was secured by a second mortgage on the two tracts of real

1. This Court granted defendant Confer's motion to dismiss on April 1, 1983.

2. Jefferson has also filed a motion to strike from Count I any reference to punitive damages. Count I seeks $100,000 in punitive damages for breach of a contract to pay fire insurance, claiming that Jefferson's failure to pay the amount of loss was wilful and wanton. Punitive damages cannot be recovered for unreason-

able and vexatious refusals to pay on insurance policies; Ill.Rev.Stat. ch. 73 § 767 establishes that attorney fees are the appropriate remedy for such unreasonable refusals to pay. *Tobolt v. Allstate Insurance Co.*, 75 Ill.App.3d 57, 68–72, 30 Ill.Dec. 824, 831–35, 393 N.E.2d 1171, 1178–81 (1st Dist.1979). Accordingly, Jefferson's motion is granted. It is so ordered.

estate in Buckingham. Jefferson claims that it did not receive notice of the existence of the second mortgage until many months after the January 8, 1982, fire.

On December 30, 1981, Jefferson executed to Jenco a change of endorsement, which increased the insurance coverage under his policy with Jefferson in exchange for additional premiums. James Confer, an insurance agent, procured the change of endorsement for Jenco through Glenn-Rousseau Co., which is the successor in interest to the Modern American Insurance Agency ("Modern"). Jenco asserts that while the insurance policy was in effect, fire damaged his property. He adds that he subsequently notified Jefferson of the loss and provided it with proof of loss, but that Jefferson has refused to pay him pursuant to the policy.

■ In considering motions for summary judgment, we emphasize that the "party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his or her favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir.1979); any doubts as to the existence of material issues of fact must be resolved against the moving party. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). The non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence presented, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176

(1962). In the present matter, Jenco has chosen not to respond to defendants' motions.

## Cupac's Motion for Summary Judgment

Jenco and Cupac entered into an agreement which provided that Cupac would finance the insurance premium due Jefferson. Modern applied for this premium finance agreement as Jenco's agent. The signature "P. Jenco" appears on the premium finance agreement; Jenco's complaint asserts that the premium finance agreement lacked a properly executed power of attorney enabling Cupac to cancel his insurance contract with Jefferson, and that any signature on the agreement is not his.[3] Cupac thus lacked the power to cancel the insurance on Jenco's behalf. Jenco also claims that Cupac did not provide him with ten days written notice of Cupac's intent to cancel the insurance policy pursuant to Ill. Rev.Stat. ch. 73 ¶ 1065.68.[4]

■ In its motion for summary judgment, Cupac points to deposition testimony by Jenco that he received a notice of acceptance from Cupac, which was dated May 18, 1981. The notice of acceptance provided that:

> [y]our copy of the Premium Finance Agreement shows the date each payment is due and payments must be made promptly. Failure to make payment when due shall be considered as a direction to cancel your policy(ies) as provided in the Agreement....

**3.** The Insurance Premium Finance Agreement contained a clause warranting that the insured's signature, in this case Jenco's, was genuine.

**4.** Ill.Rev.Stat. ch. 73 ¶ 1065.68 provides, in pertinent part, that

> [w]hen a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this Section.
> (1) Not less than 10 days written notice shall be mailed to the insured of the intent of the premium finance company to cancel the in-

surance contract unless the default is cured within such 10 day period.
(2) After expiration of such 10 day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a request for cancellation, and the insurance contract shall be cancelled as if such request for cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a copy of said request for cancellation to the insured at his last known address.

Jenco also testified that in December of 1981, he received a notice from Cupac that his insurance policy with Jefferson would be cancelled if Cupac did not receive payment within ten days. The notice was dated December 15, 1981. Finally, Jenco testified that before the fire, he received a copy of a notice of cancellation of the insurance policy dated December 30, 1981. As a result, Cupac maintains that Jenco is bound by the cancellation provisions in the premium finance agreement, notwithstanding his claim that the signature "P. Jenco" is not his. Moreover, Cupac asserts that the notice of intent to cancel it sent to Jenco fully complies with Ill.Rev.Stat. ch. 73 ¶ 1065.68.

An examination of the statutory notice requirement contained in Ill.Rev.Stat. ch. 73 ¶ 1065.68, see note 4 supra, indicates that Cupac has complied with the statute. Cupac sent a written notice of intent to cancel to Jenco on December 15, 1981, and did not request cancellation of the policy until December 30, 1981. Cupac is therefore entitled to summary judgment with respect to this aspect of Count II.

Cupac's other argument focuses upon the relationship between it, Jenco and Modern. According to Cupac, Modern had the apparent authority to enter into the premium finance agreement on behalf of Jenco, its principal; Jenco is therefore bound by the cancellation provisions of that agreement. Additionally, Jenco's six monthly payments to Cupac after receipt of the notice of acceptance allegedly constitute ratification of the terms of his agreement with Cupac.

■ Authority may be actual or apparent, actual being either express or implied. *Chalet Ford, Inc. v. Red Top Parking, Inc.*, 62 Ill.App.3d 270, 273, 19 Ill.Dec. 573, 575, 379 N.E.2d 88, 90 (1st Dist.1978). A party alleging authority must prove its source unless the act of the agent has been ratified; authority will not be presumed. *Wing v. Lederer*, 77 Ill.App.2d 413, 222 N.E.2d 535 (2d Dist.1966). A principal is bound not only for the precise act which he expressly authorized the agent to do, but also for whatever is necessary to the per-

formance of the act. *St. Ann's Home for the Aged v. Daniels*, 95 Ill.App.3d 576, 579, 51 Ill.Dec. 64, 67, 420 N.E.2d 478, 481 (1st Dist.1981). Ratification, moreover, may be express or implied, and occurs where "the principal, with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with nonaffirmation of the transaction." *Karetzkis v. Cosmopolitan National Bank*, 37 Ill.App.2d 484, 490, 186 N.E.2d 72, 75 (1st Dist.1962).

■ Jenco's six payments to Cupac after receipt of notice of Cupac's acceptance of the agreement are inconsistent with nonaffirmation of the premium finance agreement entered into by Modern on his behalf. When the principal accepts the benefits of the transaction (as Jenco did by accepting financing his insurance premiums), ratification has been found. *Karetzkis v. Cosmopolitan National Bank*, 37 Ill.App.2d 484, 490–91, 186 N.E.2d 72, 75 (1st Dist.1962). Jenco therefore ratified the agreement. Thus, even if we assume that it was Modern who signed Jenco's name to the premium finance agreement, and that Modern acted outside of its authority in so doing, Jenco's ratification of the agreement is equivalent to an original authorization, and it confirms that which may have been unauthorized, Jenco's entry into the finance agreement with Cupac. *Schoenberger v. Chicago Transit Authority*, 84 Ill.App.3d 1132, 1139, 39 Ill.Dec. 941, 947, 405 N.E.2d 1076, 1082 (1st Dist.1980).

Jenco cannot, therefore, avoid the force of the cancellation provisions in his agreement with Cupac. Accordingly, Cupac is entitled to summary judgment.

### Jefferson's Motion for Summary Judgment

Jefferson has also moved for summary judgment against Jenco, claiming that Cupac cancelled the insurance policy at issue prior to the fire. We have held that Cupac had the power to cancel Jenco's insurance policy with Jefferson. Whether the policy was in fact cancelled, however, is a different matter. Jenco authorized Cupac to cancel the policy in the event that Jenco

failed to make the required monthly payments. Cupac requested cancellation of the policy on December 30, 1981, to be effective on January 3, 1982. Jefferson thus claims that it cancelled the insurance policy on January 3, 1982, pursuant to Cupac's request, and that no coverage was in effect on January 8, 1982.

■ Cancellation of an insurance policy by an insured or his agent must be performed in accordance with the terms of the policy. *Kanter v. Trueheart*, 100 Ill. App.2d 316, 321, 241 N.E.2d 521, 524 (1st Dist.1968); *Kerr v. Pusateri*, 64 Ill.App.2d 172, 175–76, 212 N.E.2d 263, 265 (1st Dist. 1965). According to the policy, it

> may be cancelled by the named insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the mailing address shown in the Declarations, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing.

A material factual issue exists as to whether Cupac complied with the above terms. There is no evidence in the record that Cupac sent Jefferson *written* notice requesting cancellation of the policy. Notwithstanding Jefferson's assertion that Cupac "requested" cancellation, the sole evidence relating to this point is a cancellation notice which Cupac sent to Jenco, which is dated December 30, 1981. As the court held in *Kerr v. Pusateri, Id.*, without strict compliance with cancellation provisions, there can be no valid cancellation by the insurer or the insured. Absent clear evidence of compliance with the policy's cancellation clause, summary judgment for Jefferson must be denied.

*Jefferson's Motion for Summary Judgment on its Cross-Claim Against Herscher*

■ In its cross-claim for declaratory judgment against Herscher, Jefferson contends that when it issued an insurance policy to Jenco on April 28, 1981, Herscher was listed as mortgagee on the policy. Jefferson concedes that it is liable to Herscher for indebtedness pursuant to the Jenco's first mortgage, which is also dated April 28, 1981, and which secures a $66,800 note with two tracts of land in Buckingham. Jefferson, however, argues that it is not liable to Herscher for indebtedness pursuant to a second mortgage of July 10, 1981, entered into between Herscher as trustee of the above real property and Herscher as a bank. According to Jefferson: it did not receive notice of the second mortgage until "many months" after the January 8, 1982, fire; it was never designated as a second mortgagee on the insurance policy between it and Jenco; and, finally at the time the policy was issued, only the first mortgage was in existence.

In response, Herscher argues that a factual dispute exists concerning when Jefferson received notice of the existence of the second mortgage. Herscher claims that Jefferson received notice of the second mortgage as a result of the December 30, 1981, change of endorsement. Additionally, because the second mortgage is merely an increase in the debt to it, Herscher asserts that designation of Herscher as second mortgagee on the insurance policy would be unnecessary. Finally, both the mortgages were in existence on December 30, 1981, the date of the change of endorsement. The change of endorsement constitutes a reissuance of the insurance contract according to Herscher.

Initially, we observe that the December 30, 1981, endorsement does not mention the second mortgage. It is thus unclear how the endorsement would constitute notice of the existence of the second mortgage. There is, furthermore, no evidence that the

endorsement constitutes reissuance of the insurance policy as Herscher claims. The endorsement must be read together with the insurance policy, and the policy remains in full force and effect except as altered by the terms of the endorsement. 13A Appleman, Insurance Law and Practice § 7537 (1976).

It therefore appears that Jefferson did not receive notice of the execution of the second mortgage, which did not exist at the time of the insurance policy's execution. To support its motion for summary judgment, Jefferson cites a number of cases for the proposition that a mortgage clause in an insurance policy refers only to a mortgage in existence at the time the policy is executed and does not cover any subsequent mortgage interests. *E.g. Attleborough Savings Bank v. Security Insurance Co.,* 168 Mass. 147, 46 N.E. 390 (1897); *Westchester Fire Insurance Co. of New York v. Norfolk Building & Loan Assn.,* 14 F.2d 524, 525–26 (8th Cir.1926). While this rule of law may indeed be applicable, Jefferson points to no clause in the insurance policy requiring that it receive notice in the event of a change of ownership, an increase in the risk or the execution of additional mortgages.

Our review of the policy, moreover, fails to locate this sort of clause. Both *Attleborough* and *Westchester* involved such clauses, as did *Riteway Carriers, Inc. v. Stuyvesant Insurance Co.,* 213 F.2d 576 (8th Cir.1954) and *Mann v. Glens Falls Insurance Co.,* 541 F.2d 819 (9th Cir.1976). Absent the existence of such a clause, we decline to grant Jefferson summary judgment on its cross-claim.

---

Accordingly, Jefferson's motions for summary judgment are denied, and Cupac's is granted. It is so ordered.[5]

---

[5] A status hearing in this matter will be held on November 29, 1983, at 10:30 a.m.