**LUKEN, Appellee, v. BUCKEYE PARKING CORP., Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 6548.   Decided  November  13,  1945.

Wm. J. Rielly and James M. McPherson, Cincinnati, for Appellee.

Clarence M. Smith, Cincinnati, for Appellant.

### OPINION

By MATTHEWS, J.:

The jury found in favor of the plaintiff and the court rendered judgment thereon against the defendant for the value of an automobile as found by the jury. This appeal is from that judgment.

The plaintiff alleged in her petition that the defendant was in possession of premises at 107-117 Opera Place, Cincinnati, Ohio, and was operating thereon a parking lot, and on which as bailee for hire it received automobiles; that on June 27th, 1944, she drove her automobile into said parking lot and delivered it to defendant's custodian in charge under an agreement whereby defendant, in consideration of the usual charge, agreed to protect it and redeliver it to her on demand, that later on the same day she returned to demand redelivery of the automobile upon payment of the parking charge which she was prepared to pay, but that no one was in attendance at the parking lot, and as she was unable to locate her automobile on the lot, she followed the instruction on a sign that if automobile was not on lot to call at another parking lot operated by defendant and went to the other lot and there demanded that the custodian deliver her automobile to her, but he refused so to do.

By answer the defendant admitted that it was in posses-

sion of the premises in question and denied all other allegations.

It was developed at the trial without contradiction that the plaintiff had been in the habit, for about two years, of parking her automobile on an average of about once a week on this lot, and went to the parking lot on the day in question in pursuance of that habit. On entering the parking lot, she found nothing different from its appearance on previous occasions. The sign above the entrance proclaiming that it was a parking lot was in position as usual. The entrance was open and unobstructed. As many as two dozen automobiles were parked at different places on the lot. A young man, with what appeared to be parking tickets in his hand, came from between two of these parked automobiles and approached her. Supposing he was the attendant, she asked him if he would place her automobile and he said he would. He asked her how long she intended to park the automobile and when she told him about an hour, he said that in view of that she could leave the automobile where it could be easily taken out and that she would not need a parking ticket. He asked if the keys were in the automobile and when told they were, he said: "You can go. I will take care of the car." She saw him get in the automobile, but left before he had moved it from the place near the entrance where she had stopped it. While talking to her about parking the automobile, he asked her for thirty cents to park the automobile and she told him that she would pay when she returned for the automobile, as she was in the habit of doing. She said she had parked there before without receiving a ticket, but as a general rule a ticket had been given to her. This was the first time she had been asked to pay in advance there, but she had paid in advance at other parking places.

Testimony on behalf of the defendant disclosed that it had possessed this parking lot for several years upon which it had conducted a parking lot business, that there was a sign at the entrance advertising the fact that it was a parking lot, that in the conduct of the business it had been in the custom of issuing tickets to patrons, at the top of which was its name in bold type, and thereunder was a "liability clause."

It was testified that the defendant had been unable to employ an attendant just prior to this date and had placed a

log across the entrance to indicate that it was closed, but that this log had been removed to the defendant's knowledge.

It was also testified that the young man who had assumed to take care of the plaintiff's automobile had applied for the position that morning, but the manager had declined to employ him, because he did not know how to drive. It developed later that the young man was seventeen years old and sometime before that had been adjudged feeble-minded and committed to a public institution, from which he was paroled at the time.

There was no evidence that anyone representing defendant knew that the young man was on the lot and assuming to represent it in conducting the business.

After the plaintiff left the parking lot, the young man took her automobile from the lot and at some place on the public street there was a collision in which the automobile was wrecked.

The defendant's general manager testified that he believed automobiles were parked on the lot when no attendant was there. The inference is, that the defendant collected nothing for this, although there is no direct testimony to that effect.

The principal contention of the appellant is that there was no evidence to submit to the jury, and that the court should, therefore, have sustained its motions for an instructed verdict and for judgment.

As we interpret the record, there is evidence tending to prove that the owner of a business carried on at a designated place, concluded to discontinue it for a short interval, but gave no notice of such discontinuance, and allowed the place to remain open and unattended, and the business signs to remain in place during the interval during which an impostor took advantage of the situation to enter the place and transact the business as though he were authorized. A customer who had been a patron for two years repaired to the place and transacted the customary business with the impostor under the circumstances set forth.

Now what were the duties of the parties under these circumstances?

Rule 103 of the Restatement of the Law of Agency is:

"A person who untruthfully manifests to a third person that an act purported to be done on his account was authorized or ratified in a manner sufficient for authorization or ratification, or that an act done by another who impersonates him, was done by him, knowing or having reason to know that the third person is likely to act in reliance upon such manifestation, is subject to liability as if such act were authorized or ratified or had been done by him, if the third person so changes his position in reasonable reliance upon such manifestation that it would be inequitable not to impose such liability."

In 1 O. Jur., 632, it is said:

"* * * where one by word or conduct purposely causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is precluded from averring against the latter a different state of things as in fact existing at the same time. The estoppel is allowed on the ground of negligence or fraud on the part of the principal, upon the thory that when one of two innocent persons must suffer loss, the loss should fall upon him whose conduct brought about the situation."

And at page 633:

"Under the principle that one may be estopped to deny the authority of another to act as agent, a hotel proprietor who leaves another in the hotel office, either designedly or negligently, clothed with apparent authority to do what hotel clerks usually do, may be held liable to a guest, who, finding such person apparently in charge of the hotel, deposits money with him for safe-keeping during the night, with which this person later absconds, although the proprietor denies that the person was his agent."

See, Also, 2 Am. Jur., 86, et seq.

The first paragraph of the syllabus to Miltenberger v. Hulett, 175 S. W., (Mo.) 111, states the essence of the decision

as follows:

"Where the proprietor of a place of business negligently permits a person not his agent to be in apparent charge, and such person assumes to transact the proprietor's business with a patron, the appearance being such as would lead a man of ordinary care to believe that the impostor was really his agent, the proprietor cannot take advantage of the impostor's lack of authority."

In Quint v. O'Connell, 94 Atl. (Conn.) 288, at 290, the Supreme Court of Connecticut said:

"Apparent and ostensible authority is such authority as a principal intentionally or by want of ordinary care causes or allows a third person to believe that the agent possesses. This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe, and did believe, that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his aegnt."

See, also, Herschenhart v. Mehlman, 213 N. Y. S. 48; Dennis v Coleman's Parking & Greasing Stations, Inc., 2 N.

W. (2d) (Minn.) 33; and **Kannelles v. Locke, 12 Oh Ap 210.**

Under these authorities, we are of the opinion that there is substantial evidence of acts and omissions of defendant creating an apparent authority and upon which to base an estoppel of the defendant to deny that the impostor was its duly authorized agent in favor of a customer who was justified in relying, and in fact did rely on the appearance of authority. But the customer could only be justified if he believed in good faith, after exercising reasonable care and prudence, that the person who was assuming to act as an agent was in truth an agent and was acting within his authority.

While in this case there are acts and omissions on the part of the defendant that might cause a reasonably prudent person to conclude that the parking lot was being operated that day as usual and cause her to enter and entrust her automobile to the attendant whom she had reason to anticipate would be there to serve her, the conduct of the impostor who attended her was unusual in some respects and might have aroused the suspicion of a reasonably prudent person and caused inquiry and disclosure of the imposition. This situation raised issues for submission to the jury.

We are, therefore, of the opinion that the Court did not err in overruling the motions for an instructed verdict and for judgment. We come then to a consideration of whether there was error in the manner of submission to the jury.

As already noted, the liability of the defendant depended upon the decision of two issues:

(1st) Was the defendant negligent in allowing the parking lot to remain open and unattended?

(2nd) Was the plaintiff, exercising reasonable care and prudence, misled by the conduct of the defendant into believing that the parking lot was in operation and caused to leave her automobile on the lot in charge of the impostor in the belief as a reasonably careful person that he was the defendant's duly authorized agent?

An examination of the charge discloses that the court read the pleadings to the jury, but did not state the issues in any other way, and submitted the case on the theory that liability depended upon establishing a prima facie case

of actual authority of the attendant, and proof of failure to use due care for the protection of the automobile. We think it is sufficient to quote this portion of the charge:

"If you find that the contention of the defendant is correct, that on June 27, 1944, this parking lot was closed to the public; that the individual who purported to be a representative of the Company was not in fact an employe of the Company, had no authority to act for and on behalf of the Company, under such circumstances, you will return a verdict in favor of the defendant.

"But if you find by a preponderance of the evidence in this case that there was a contract of bailment, that the individual who purported to be the agent of the defendant corporation on the parking lot at the time in question was, in fact, the employe of that corporation, then you will consider whether the explanation of the defendant as to the manner in which the car was taken from the lot, * * *"

We are of the opinion that the court erred in so defining the issues to the jury and in so charging as to the basis of liability.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

HILDEBRANT, PJ, & MATTHEWS, J, concur in the syllabus, opinion and judgment.

ROSS, J., concurring:

I concur in the conclusions of my associates that the judgment of the trial court should be reversed, but an examination of the pleadings and evidence requires, in my opinion, that judgment in this court be rendered for the defendant.

The ultimate facts stated in the petition are—(1) That the defendant is an Ohio corporation engaged in the business of operating parking lots. (2) That on June 27, 1944, it operated a particular location as a parking lot on the south side of Opera Place, between Race and Elm Streets, Cincinnati. (3) That on said 27th day of June, 1944, plaintiff drove her automobile, being a 5-passenger Hudson 1936 Model Terraplane, Motor No. 222393, Serial No. 6149692, into said park-

ing lot, and delivered it to defendant's custodian in charge of said parking lot under an agreement whereby defendant, in consideration of the usual charge to be paid therefor by plaintiff, agreed with plaintiff to protect and keep said automobile for redelivery to her on demand. (4) That plaintiff later, on the same day, returned to such parking lot for redelivery of her automobile but "said automobile had been removed from said lot." (5) "That the custodian of defendant to whom she had previously delivered" such automobile was absent therefrom. (6) That said lot was allowed by defendant to be unattended. (7) That defendant placed a sign on said lot directing patrons if their automobiles were not on said lot to call at another address, where defendant operated another parking lot. (8) That plaintiff called at such address and her demand for the return of her automobile was refused by defendant's agent and custodian in charge of such lot.

In the answer of defendant it is admitted: (1) That the defendant is a corporation as alleged. (2) That it is in possession of the premises on Opera Place. Otherwise, the answer is a general denial.

Now the plaintiff introduced evidence sustaining entirely different ultimate facts. The introduction of such evidence was permitted, over the continued objection and protest of the defendant, who at the close of all the evidence moved for an instructed verdict on the ground that plaintiff had failed to prove the necessary allegations of the petition. There was no amendment to the petition, nor was any requested.

The evidence submitted by the plaintiff did present a prima facie case, that the defendant had so negligently used the premises on Opera Place that the plaintiff was caused to lose her property as the direct and proximate result of such negligence. Now such negligence is to be distinguished from that involved **after** the relationship of bailor and bailee is established. The evidence wholly fails to show any such relationship between plaintiff and defendant, but, on the contrary, conclusively establishes that no such relationship existed.

No contract between plaintiff and defendant to use care was ever proved. Such contract is alleged in the petition, the plaintiff alleging in terms a **specific** contract of bailment, with "defendant's custodian in charge of said parking lot

under an **agreement** whereby defendant in consideration of the usual charge to be paid therefor by plaintiff **agreed with plaintiff** to protect and keep said automobile for redelivery on her demand." (Emphasis added.)

Such "custodian" was a feeble minded trespasser with whom the defendant had not the slightest contractual relationship. It is true that plaintiff could have alleged the cause of action in tort or estoppel, if you wish, concerning which she introduced evidence. The patent factor is, however, she did not, and the result is, if the conclusion of the majority of the court is correct, that she is permitted to allege specifically a cause of action in contract and sustain the same by evidence which supports only a primary tort liability entirely disassociated with any suggestion of contractual relationship between plaintiff and defendant.

I realize that this state, both by statute and decisions, has gone to the furtherest extreme in permitting loose pleading and proof. Sec. 11363, GC, (amendment) and §11556, GC, (variance) are examples of provisions for such pleading and proof. However, the legislature has placed some limit upon the extent to which amendment may be carried.

Sec. 11363, GC, by providing that the court may permit amendment only "when the amendment does not substantially change the claim or defense." And, again, although a variance between allegations and proof may not be deemed material unless a party has been misled, still in §11558 GC, it is provided:

"When the allegation of the claim or defense to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning, it shall not be deemed a case of variance within the next two preceding sections, but a failure of proof."

It seems to me that this last section has direct application to the instant case. I am also aware of the recent decisions of the Supreme Court in which "a liberal construction of a petition is required." Gugle v Loeser, 143 Oh St 362; **Parletto v Industrial Commission of Ohio, 140 Oh St 12; Humphries v Wheeling Steel Corp., 132 Oh St 263; Guardian Life Ins. Co, etc. v Veser, 128 Oh St 200.** Nor am I forgetful of the decision of the Supreme Court in **Globe Indemnity Co.**

**v Wassman, 120 Oh St 72,** where in the third paragraph of the syllabus it is stated:

"Where a plaintiff is uncertain as to which of the two grounds stated in his petition he may be able to prove in order to recover against a defendant and it is uncertain as to which of the two he can safely plead, he cannot be required to elect upon which of the two grounds he will stand."

To the same effect is **Sicaid v Kremer, d. b. a., etc., 133 Oh St 291, 296.**

In the instant case the plaintiff could have taken advantage of this ruling. She did not. She chose to predicate her claim for relief upon allegation of facts which could only sustain a cause of action in contract. However, it was determined in **Nordin v Coulton, 142 Oh St 277,** that: "The nature of a case is determined from the pleadings and the issues presented." And in **Mahoning National Bank v City of Youngstown, 143 Oh St 523, 532,** it is held that issues to be determined in an action are those made by the pleadings at time of trial. In **Gerend v City of Akron, 137 Oh St 527,** at page 531, it is stated:

"The function of the pleadings in the trial of a cause is to apprise the court and the parties of the respective grounds of the controversy, furnish the question to be tried, and determine the nature and scope of the trial."

See, also, **Kelley, et al v Armstrong, et al., 102 Oh St 478.**
It is true that a plaintiff, having stated facts in a petition entitling him to relief of some sort, may not be denied same, because he may have mistaken the nature of such relief. **Triff v National Bronze & Aluminum Foundry Co., 135 Oh St 191; Schaefer v First National Bank of Findlay, 134 Oh St 511, 520.**
The real difference between the members of this Court is as to the effect of the allegations of the petition. It is the conclusion of the majority that the facts stated in the petition will sustain proof of liability based primarily upon the negligent occupation of the premises in question or an implied contract based upon an estoppel. It is my conclu-

sion that the facts alleged cannot be extended to allege anything but a specific contract.

It seems too well settled in Ohio that in spite of all the liberality of pleading extant, a cause of action in contract may not be changed to one in tort over the objection of the defendant. **31 O. Jur., p. 943.** In this case, no amendment was made or required. It does not seem unjust that a plaintiff should be required to state in a petition the ultimate facts upon which reliance is put for recovery. To permit a plaintiff to state a set of facts which call for a conclusion that a specific contract was violated and on trial prove facts which show only a tort liability is a practice, in my opinion, not conducive to securing substantial justice to all parties in the action.

For these reasons, I feel that judgment should be here entered for the defendant. The motion for an instructed verdict made by the defendant at the close of all the evidence should have been granted. However, I join with my associates in agreement the judgment of the trial court must be reversed for the reasons given.

I do not concur in the syllabus.