STANLEY RACLAW et al., Plaintiffs-Appellees, v. FAY, CONMY AND COMPANY, LTD., et al., Defendants-Appellants.

First District (1st Division)   No. 1—94—1550

Opinion filed June 28, 1996.—Rehearing denied August 8, 1996.

Anthony J. Nasharr III and Lisa R. Cotler, both of Gregorio & Nasharr, and Carponelli & Krug, both of Chicago, for appellant Fay, Conmy & Company, Ltd.

Law Offices of Geoffrey C. Miller, of Homewood, for appellees Stanley Raclaw, Florence Raclaw, A. Claude Broze, and Alice Broze.

JUSTICE BRADEN delivered the opinion of the court:

Defendant, Fay, Conmy and Company, Ltd. (Fay, Conmy), appeals from an April 4, 1994, order by the circuit court of Cook County, awarding judgment in favor of plaintiffs, Stanley Raclaw and Flor-

ence Raclaw (the Raclaws), as well as A. Claude Broze and Alice Broze (the Brozes). Fay, Conmy argues that the trial court erroneously held that (1) it was liable for the acts of James Griffin (Griffin) under the theory that it cloaked Griffin with the apparent authority to act on its behalf, and (2) through its acts it provided Griffin with the opportunity to act as an imposter to defraud plaintiffs. Fay, Conmy also argues that the trial court also erroneously awarded attorney fees to the Raclaws and the Brozes under section 10a(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(c) (West 1994)).

We reverse.

The facts disclosed by the record are as follows. Fay, Conmy, a certified public accounting firm, gratuitously allowed Griffin, an attorney, to use its address, offices, and telephones between September 1985 and September 1986. Specifically, Fay, Conmy granted Griffin permission to (1) use vacant office space, as available; (2) utilize the office library; (3) receive telephone calls via its receptionist; (4) make telephone calls; and (5) receive mail. Griffin was neither employed by Fay, Conmy nor expressly authorized to act as its agent. Nor did Fay, Conmy and Griffin ever enter into any agreement for the lease of any specific office space. The record indicates that sometime during this period Griffin obtained an unknown quantity of Fay, Conmy's business stationery and envelopes.

In October and November 1985, Griffin approached the Raclaws as well as the Brozes, respectively, regarding an investment opportunity. Griffin, brother-in-law of all four individuals, expressly stated to them that he was affiliated with Fay, Conmy, a company which he stated was engaged in the business of marketing financial investments. Specifically, Griffin indicated that Fay, Conmy marketed an interest-bearing mortgage money account offering an attractive return on investment. The record reveals that Griffin expressly instructed the Raclaws and the Brozes to telephone him at his office at Fay, Conmy if they had further interest in such an investment. Griffin then gave both couples Fay, Conmy's main telephone number. Both the Raclaws and the Brozes subsequently telephoned Griffin at the aforementioned telephone number. In each case, these telephone calls were answered by a receptionist with the greeting, "Fay, Conmy and Company." Both the Raclaws and the Brozes asked the receptionist for "James F. Griffin" and were connected with him directly.

The Raclaws and the Brozes ultimately invested money with Griffin and, per his instruction, mailed their checks payable to "James F. Griffin, trustee" directly to his attention at Fay, Conmy, 10 South Riverside Plaza, Suite 1560, Chicago, Illinois. Griffin

acknowledged receipt of the monies by sending both the Raclaws and the Brozes a confirmation letter on Fay, Conmy's letterhead. Both the Raclaws and Brozes called Griffin several times at Fay, Conmy's offices, via telephone, to discuss various matters related to their investment. The record indicates that the Raclaws as well as the Brozes also received a subsequent letter reporting the status of their investment, signed by Griffin and printed on Fay, Conmy's business letterhead. The record indicates that instead of investing the money as promised, Griffin deposited the checks into his personal checking account or otherwise converted the monies for his benefit.

The Raclaws and the Brozes subsequently brought an action based on alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2, 10a(a) (West 1994)) to recover damages occasioned by Fay, Conmy's actions, which plaintiffs alleged had cloaked Griffin with apparent authority to act on its behalf.

The first issue raised on appeal is whether the trial court properly concluded that Fay, Conmy's actions cloaked Griffin with apparent authority to act on its behalf in soliciting deposits for an interest-bearing mortgage money account or other financial investment.

The standard of review to apply when a challenge is made to the trial court's ruling, following a bench trial, is whether the trial court's judgment is against the manifest weight of the evidence. *Bruss v. Klein*, 210 Ill. App. 3d 72, 78, 569 N.E.2d 904, 908 (1991). For a judgment to be against the manifest weight of the evidence, the appellant must present evidence that is so strong and convincing as to overcome, completely, the evidence and presumptions, if any, existing in the appellee's favor. *Ruggio v. Ditkowsky*, 147 Ill. App. 3d 638, 642, 498 N.E.2d 904, 908 (1986). The trial court's finding must be given great deference because the trial court has the opportunity to view and evaluate witnesses' testimony and is, therefore, in the best position to evaluate their credibility. *DeLong v. Cabinet Wholesalers, Inc.*, 196 Ill. App. 3d 974, 978, 554 N.E.2d 574, 576 (1990).

■ The existence of an agency relationship is a question of fact (*Matthews Roofing Co. v. Community Bank & Trust Co.*, 194 Ill. App. 3d 200, 206, 550 N.E.2d 1189, 1193 (1990)), and the party asserting the agency has the burden of proving the agency's existence by a preponderance of the evidence (*In re Estate of Maslowski*, 204 Ill. App. 3d 379, 383, 561 N.E.2d 1183, 1186 (1990)).

■■ An agency relationship created by apparent authority flows from the acts of the principal (*Devers v. Prudential Property & Casualty Insurance Co.*, 86 Ill. App. 3d 542, 545-46, 408 N.E.2d 462, 465 (1980)) and arises when a principal creates, by its words or conduct,

the reasonable impression in a third party that the agent has the authority to perform certain acts on its behalf. The principal, having placed the agent in a situation where he may be presumed to have the authority to act is estopped, as against the third persons, from denying the agent's apparent authority. *Crawford Savings & Loan v. Dvorak*, 40 Ill. App. 3d 288, 292-93, 352 N.E.2d 261, 264 (1976). To prove apparent agency, one must establish (1) that the principal held the agent out as having authority or knowingly acquiesced to the agent's exercise of authority; (2) the third person's knowledge of the facts and his or her good-faith belief that the agent possessed such authority; and (3) the third person's reliance on the agent's apparent authority to his or her detriment. *Northern Trust Co. v. St. Francis Hospital*, 168 Ill. App. 3d 270, 278, 522 N.E.2d 699, 704 (1988). In order to establish liability of a principal, the plaintiff must demonstrate conduct by the principal from which a reasonably prudent person, using discretion and diligence, could conclude that the alleged agent was authorized to perform certain acts on the principal's behalf. *Devers v. Prudential Property & Casualty Insurance Co.*, 86 Ill. App. 3d 542, 408 N.E.2d 462.

■ Appellees contend that Fay, Conmy cloaked Griffin with apparent authority by permitting Griffin to (1) occupy a portion of its business offices at various times; (2) utilize its business telephones; (3) utilize its receptionist to receive incoming telephone calls and take telephone messages on his behalf, including incoming calls from the Raclaws and the Brozes; (4) receive business mail at its offices, including personal bank statements, as well as checks mailed to him from the Raclaws and the Brozes; and (5) access its stationery, which he used in corresponding with the Raclaws and the Brozes. We disagree.

Contrary to the aforementioned assertions, the record indicates that Fay, Conmy did not, by its conduct or actions, hold Griffin out as its agent. There is also no evidence that Fay, Conmy's actions, in any way, cloaked Griffin with the apparent authority to act on its behalf in specifically soliciting deposits for an interest-bearing mortgage money account or any other investment product. Here, the record is devoid of evidence that Fay, Conmy consented to or knowingly acquiesced to Griffin's exercise of authority on its behalf. As the record indicates, Fay, Conmy merely operated an accounting business providing certified public accounting services to the business community. The record contains no evidence that Fay, Conmy ever engaged in the business of marketing investment products. The acts of allowing Griffin to use its address, offices, and telephones, alone, do not constitute Fay, Conmy's knowing consent or acquiescence to Griffin's exercise of authority on its behalf.

It was also manifestly erroneous for the trial court to conclude that either the Raclaws or the Brozes could have reasonably relied on Griffin's representations that Fay, Conmy was in the business of soliciting deposits for any type of interest-bearing mortgage money accounts. Here, the record is devoid of evidence that Fay, Conmy, its employees, or agents engaged in the marketing of investment products. There is also no evidence of external communications or advertising generated by Fay, Conmy, its employees, or agents indicating that it marketed investment products of any kind. The record is also devoid of any evidence that the Raclaws or the Brozes performed an inquiry or investigation of Fay, Conmy's operations. A minimal inquiry or investigation would have revealed that Fay, Conmy was merely a certified public accounting firm dedicated to providing general business services. Under these circumstances, this court is not persuaded that a reasonably prudent person, exercising discretion and diligence, could have possibly concluded that Griffin was authorized to market interest-bearing mortgage money accounts on behalf of Fay, Conmy.

■ The second issue on appeal is whether the trial court erroneously held Fay, Conmy liable for Griffin's acts under the agency theory of imposter liability. Here, the trial court found that Griffin had acted as imposter agent of Fay, Conmy and, relying on *Hoddeson v. Koos Brothers*, 47 N.J. Super. 224, 135 A.2d 702 (1957), *Regal Shop Co. v. Legum Distributing Co.*, 206 Md. 267, 111 A.2d 613 (1955), and *Luken v. Buckeye Packing Corp.*, 77 Ohio App. 451, 68 N.E.2d 217 (1945), imposed liability upon Fay, Conmy for his actions. The trial court imposed such liability after determining that Fay, Conmy had allowed Griffin to use its address, offices, and telephone, providing Griffin with the opportunity to defraud both the Raclaws and the Brozes.

The cases relied on by the trial court are distinguishable from the case at bar. Here, the record indicates that the subject transaction was merely the purchase of an investment product by the Raclaws and Brozes from their brother-in-law, Griffin. The cases relied on by the trial court involve transactions in a commercial retail setting in which a member of the general public enters a retail business establishment or store, which is open to the public and known to sell specific products or provide specific services. The defrauded person in these cases is approached by an imposter whom the customer assumes to be an agent or employee of the business, authorized to offer the services or the products offered or displayed in the store. Under these circumstances courts have held retail business establishments responsible for any fraud perpetrated on its customers by such imposter agents.

Here, unlike the aforementioned retail stores and business establishments that are known to the public for selling a specific product or service, Fay, Conmy is not known to the general public as a marketer of investment products. Moreover, neither the Raclaws nor the Brozes specifically went to Fay, Conmy's offices to purchase an investment product. Here, the Raclaws and the Brozes merely engaged in a conversation with their brother-in-law regarding an interest-bearing mortgage money account allegedly offered by Fay, Conmy. Both the Raclaws and the Brozes were instructed by Griffin to call him at a specified number if they had any interest in the investment. They never personally investigated whether Fay, Conmy actually marketed such a product. Nor did they visit the offices or discuss the matter with any employee or authorized agent of Fay, Conmy. As such, the trial court erroneously held Fay, Conmy liable for Griffin's acts under the agency theory of imposter liability.

■ The trial court also erroneously awarded attorney fees under section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(c) (West 1994)).

For the aforementioned reasons, we reverse the circuit court's judgment.

Reversed.

CAMPBELL, P.J., and BUCKLEY, J., concur.